UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                    CASE NO. 06-10179

OCA, INC. et al.                                                                     SECTION "B"

     DEBTORS                                                                     CHAPTER 11
                                                                                                                           Jointly Administered
*****************************************************************************
TERRY SCOTESE, D.D.S.
     PLAINTIFF

VERSUS                                                                                 ADV.P. NO. 06-1146

ORTHODONTIC CENTERS OF OHIO, INC.
     DEFENDANT

## MEMORANDUM OPINION

       This matter came before the court on March 15-19, 2007 on the following: 1) the adversary complaint of Dr. Terry Scotese against the debtor, OCA, Inc.; 2) the debtor's counterclaim against Dr. Scotese; 3) the debtor's motion in the main bankruptcy case to assume an executory contract, which was contained in the confirmed plan of reorganization (P-2213); and 4) the objection to assumption (P-1092) filed by Dr. Scotese. For the reasons set forth below, the court grants the motion to assume and dismisses Scotese's adversary complaint.

**I.**     **Background Facts**

       The debtor, OCA, Inc. ("OCA"), is a company that provides services to affiliated dental practices through separate subsidiaries that operate in each state where there is an affiliated practice. The basic business model of OCA and its subsidiaries is that they enter into business services agreements ("BSAs") with affiliated dental practices, primarily orthodontists. OCA generally provides the necessities for starting up and running a dental practice, i.e., office space,

equipment, trained office staff, computer software for managing the practice. In exchange the affiliated practice pays a monthly service fee based on a percentage of the practice's profits.[1] These BSAs are the primary operating asset of OCA and are the means through which it generates its revenue.

OCA and most of its subsidiaries filed Chapter 11 petitions under the Bankruptcy Code on March 14, 2006.[2] A small number of additional subsidiaries filed Chapter 11 petitions on March 17, 2006 and June 2, 2006. All of the 51 subsidiary debtors' cases have been consolidated and are being jointly administered with the main case.[3]

OCA and Scotese entered into a BSA in June 1999 and subsequently executed two amendments to the BSA for the operation of several practices located in Ohio. After OCA filed its Chapter 11 petition, it reached an agreement with Scotese, as well as several other affiliated practices, that both parties would continue to perform under the BSA until the court could make a determination as to whether the BSA could be assumed by the debtor.[4] OCA's plan of reorganization was confirmed by the court on January 26, 2007, and Article 5 of the plan constituted a motion to assume the BSAs as of the effective date of the plan.[5] Article 5 also provides that the court hear the motions to assume and determine certain issues including: 1) the

---

[1] In this case the monthly service fee was 40% of the net operating profits of Scotese's practice.

[2] See title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

[3] For simplicity, when the court refers to OCA or the debtor, the court means all of the 52 debtor companies collectively unless it specifically enumerates an individual company.

[4] (P-1295).

[5] (P-2213).

nature, extent and amount of any default by the debtor; 2) the method of cure; 3) the method of providing adequate assurance of future performance and compensation for any default; and 4) all other matters pertaining to assumption.

Scotese timely filed an objection to assumption alleging that the BSA could not be assumed because under state law it was terminated pre-petition, and because the BSA is illegal under Ohio law. Scotese further asserts that the BSA is in the nature of a personal services contract and cannot be enforced by the debtor or that the BSA is a "performance contract" that cannot be enforced through specific performance. Finally, Scotese contends that in the event the contract was not terminated pre-petition, the debtor is in default and owes a cure amount pursuant to 11 U.S.C. § 365(b)(1).

Scotese also filed an adversary complaint against the debtor alleging three causes of action. First, Scotese alleges he is entitled to an accounting of all collections and disbursements of his revenues for the entire duration of the relationship between OCA and Scotese due to questions about the accuracy of the debtor's accounting methods. Second, Scotese alleges breach of contract by the debtor. Third, Scotese alleges that through the contract the debtor has engaged in the unlawful practice of dentistry under the Ohio Revised Code § 4715, *et seq.*

**II.     Legal Analysis**

    **A.     The motion to assume the contract.**

Section 1123(b)(2) of the Bankruptcy Code states that a plan of reorganization may provide for the assumption of executory contracts subject to the strictures of § 365. The parties appear to agree that the BSA is in fact an executory contract, or at least no argument was raised that it is not an executory contract. It certainly fits the classic definition of an executory contract

as substantial performance is still due from both parties to the BSA.[6] Courts apply the "business judgment" rule when examining a debtor's decision to assume or reject a contract; i.e., the court should review the trustee's decision to assume or reject an executory contract by examining the "contract and the surrounding circumstances and apply its best 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume it."[7]

First the court examines Scotese's claim that the BSA terminated pre-petition. Only contracts in existence at the commencement of the case may be assumed under § 365.[8] At the hearing, no evidence was presented to support Scotese's argument that the BSA terminated pre-petition. Scotese admitted that he has received biweekly payments from OCA of $7,000 and continued to receive those payments even after OCA filed its Chapter 11 petition.[9] The termination provisions of the Scotese BSA requires Scotese to send a letter placing OCA in default of the contract before the contract can be terminated, and the court found no evidence that Scotese placed the debtor in default at any time.[10] Scotese testified that the debtor continues to provide its services to his practice.[11] Thus, the court finds that the BSA was not terminated

---

[6] As of the date of the filing of the Chapter 11 petition and even down to the date of trial, OCA was continuing to perform its obligations under the BSA. With the exception of paying certain debts to OCA, Scotese is continuing to perform his obligations under the BSA.

[7] *In re Orion Pictures Corp.,* 4 F.3d 1095, 1098 (2nd Cir. 1993). *See also N.L.R.B. v. Bildisco,* 465 U.S. 531, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984).

[8] *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1212 (7th Cir. 1984); 3 Collier on Bankruptcy ¶ 365.02[2] (15th ed.rev. 2005).

[9] Trial Transcript of March 15, 2007 at p. 70.

[10] Exhibit 1, copy of the Scotese BSA at section 4.3; Trial Transcript of March 15, 2007 at p. 83.

[11] Trial Transcript of March 15, 2007 at p. 75.

pre-petition.

The court next examines Scotese's contention that the BSA is in the nature of a personal services contract and cannot be assumed for this reason. Although Scotese does not cite the section of the Bankruptcy Code under which he brings this objection, the court assumes Scotese refers to § 365(c)(1), which states:

> The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if-
> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
> (B) such party does not consent to such assumption or assignment.

This provision, which is often referred to as prohibiting the assumption of personal service contracts, only applies however, when the applicable law excuses the *non-debtor party* to the contract from accepting performance from a third party. Nothing in underlying law that Scotese points to or that the court can locate would allow Scotese to refuse to accept performance of the debtor's contractual duties from another party. Indeed, Scotese does not contend that he is excused from accepting performance from an entity other than the debtor. Thus, the court rejects Scotese's argument that this is a non-assumable personal services contract within the meaning of 11 U.S.C. § 365(c)(1).

Scotese refers to two cases from Ohio courts in his proposed findings of fact to support his argument that the BSA is a "performance contract" that cannot be enforced through specific performance. The first, *Podlesnick v. Airborne Express, Inc.,* 627 F.Supp. 1113 (S.D.Ohio 1986) merely stands for the proposition that under Ohio law, specific performance is not available as a remedy to a former employee seeking reinstatement of his employment and is completely

inapposite here in that this court is not faced with a former employee demanding reinstatement. The second case referred to by Scotese, *Namay v. Orthodontic Centers of Ohio* in the Northern District of Ohio, was not even an opinion issued by that court but instead was an order granting in part and denying in part cross motions for summary judgment. Additionally, this court's research has determined that the order, which was issued on March 16, 2005 was subsequently ordered stricken from the record by order dated April 4, 2005. Thus the court gives no effect to the March 16, 2005 order because it is no longer a valid order of the Ohio district court.

Scotese next claims that the BSA cannot be assumed because it is illegal under section 4715.01 of the Ohio Statutes. The court has examined §4715.01 in its entirety, as discussed below, and does not agree that it prohibits any of the provisions in the BSA between Scotese and the debtor. The court has ruled in some of the related adversary proceedings before it in this Chapter 11 that in certain states, statutory language regulating the practice of dentistry does prohibit similar agreements.[12] This does not mean, however, that every BSA the debtor has entered into is illegal on its face as Scotese seems to suggest. Nor does it mean that this court should apply decisions from other states to the Ohio statutes. The court rejects the assertion that the BSA cannot be assumed because it is illegal under Ohio law.

In short, Scotese has made no persuasive argument why the debtor should not be allowed to assume this BSA. On its face it does not clearly appear to be a contract violative of Ohio law,

---

[12] The court is certainly aware that it has already held that the BSAs utilized by OCA in Texas, Illinois, Washington and Colorado were illegal under the laws of those particular states. In those cases, there was, if not definitive authority, at least clear guidance by either a state court or a federal district court sitting in the state concerned, which this court felt compelled to follow. *See generally Penny v. Orthalliance, Inc.,* 255 F.Supp.2d 579 (N.D.Tex. 2003); *Orthodontic Centers of Illinois, Inc. v. Michaels*, 403 F.Supp.2d 690 (N.D.Ill. 2005); and this court's reasons for order in Adv.P.No. 06-1162 (P-32) and Adv.P.No. 06-1210 (P-33).

and there certainly is a sufficient benefit to the debtor in electing to assume this contract. Keeping the BSAs alive over a period of years is not just beneficial to the debtor, it is the lifeblood of the debtor's business. Under the debtor's business model, it advances substantial sums of money at the beginning of the contractual relationship to make available to the young orthodontist opening an office or to an orthodontist seeking to add offices, the office space, expensive equipment, software systems, furniture, fixtures, business advice, and other amenities essential to start a first, second or additional offices. In this case Dr. Scotese was furnished the wherewithal to operate at various times at least five different offices in Ohio, one of which had seven operatories and another with six. OCA planned to and its future success is dependant upon recouping these hundreds of thousands of dollars advanced in the first years of the arrangement over a long period of time by receiving a percentage of the practice's profits. Assumption of the BSA is not just beneficial, it is essential to successful consummation of the debtor's plan of reorganization. The court will not second guess the debtor's business judgment by denying the motion to assume. Further, the court finds that because the debtor has continued to perform the contract post-petition, it is not in default; thus, there is no cure amount. The motion to assume is granted.

      **B.**      **The adversary complaint filed by Dr. Scotese.**

The Scotese complaint first alleges that Scotese is owed an accounting by OCA because OCA's accounting is unreliable and that OCA has been overcharging Scotese for its services. Scotese also alleges that OCA's actions have raised serious and compelling questions regarding the accuracy of its accounting practices and procedures, and that OCA charged Scotese for its services at more than OCA's actual cost. At trial, no evidence was put on by Scotese to support

these allegations. Anthony Paternostro, the Senior Vice President of OCA, stated in his testimony that when OCA began to charge expenses for its services, it charged less than the actual expenses it incurred, and that while Scotese was initially overcharged along with a few other orthodontists affiliated with OCA, the overcharge was corrected as soon as it was discovered.[13]

Scotese alleged that he did not owe OCA any money related to his former offices in North Olmstead and Parma. Paternostro testified that Scotese did not owe OCA any debt on account of his former North Olmstead practice. Documents were produced by Scotese that showed a balance of $185,781 related to North Olmstead, but the documents also showed a notation next to the North Olmstead heading that read "suspended".[14] Paternaostro testified unequivocally that this debt was not a liability of Scotese.[15] Paternostro also testified that the debt related to the Parma office was still owed by Scotese, and Scotese produced no countervailing evidence to rebut this.[16] It appears from the testimony of the witnesses that accounting information is available to Scotese, but that he either does not understand it or has not made an effort to discuss his concerns with OCA. Scotese failed to prove his right to an accounting.

Scotese also argues that OCA breached the BSA by its failure to pay timely business expenses and failure to pay timely net revenues to Scotese as required by the BSA. Testimony at

---

[13] Trail Transcript of March 15, 2007 at p. 182-83.

[14] Exhibit 36 at p. 4.

[15] Trial Transcript of March 15, 2007 at 130-32.

[16] Trial Transcript of March 15, 2007 at 132.

trial established that OCA has always paid Scotese his biweekly payments and the salaries of his staff timely.[17] Testimony also established that OCA made late payments on two or three bills related to Scotese' practice around the time that OCA's headquarters were evacuated due to Hurricane Katrina.[18] Scotese admitted that he did not suffer any damage as a result of these late payments, and he also testified that these late payments were not recurring.[19] The court finds that Scotese failed to prove his breach of contract claim.

Scotese next asserts that the BSA is illegal under Ohio law because it violates Ohio's Revised Code § 4715.01, which states:

> Any person shall be regarded as practicing dentistry, who is a manager, proprietor, operator, or conductor of a place for performing dental operations, or who teaches clinical dentistry, or who performs, or advertises to perform, dental operations of any kind, or who diagnoses or treats diseases or lesions of human teeth or jaws, or associated structures, or attempts to correct malpositions thereof, or who takes impressions of the human teeth or jaws, or who constructs, supplies, reproduces, or repairs any prosthetic denture, bridge, artificial restoration, appliance, or other structure to be used or worn as a substitute for natural teeth, except upon the order or prescription of a licensed dentist and constructed upon or by the use of casts or models made from an impression taken by a licensed dentist, or who advertises, offers, sells, or delivers any such substitute or the services rendered in the construction, reproduction, supply, or repair thereof to any person other than a licensed dentist, or who places or adjusts such substitute in the oral cavity of another, or uses the words "dentist," "dental surgeon," the letters "D.D.S.," or other letters or title in connection with his name, which in any way represents him as being engaged in the practice of dentistry.
>
> Manager, proprietor, operator, or conductor as used in this section includes any person:
>
> (A) Who employs licensed operators;

---

[17] Trial Transcript of March 15, 2007 at 86.

[18] Trial Transcript of March 15, 2007 at 85, and Trial Transcript of March 19, 2007 at 85-86.

[19] Trial Transcript of March 15, 2007 at 85.

9

> (B) Who in the possession of licensed operators dental offices or dental equipment necessary for the handling of dental offices on the basis of a lease or any other agreement for compensation or profit for the use of such office or equipment, when such compensation is manifestly in excess of the reasonable rental value of such premises and equipment;
>
> (C) Who makes any other arrangements whereby he derives profit, compensation, or advantage through retaining the ownership or control of dental offices or necessary dental equipment by making the same available in any manner for the use of licensed operators; provided that this section does not apply to bona fide sales of dental equipment secured by chattel mortgage.

While Scotese argues that this language applies to the BSA to make it illegal under Ohio law, it does so using cases interpreting similar but not identical statutes in Texas and Illinois. The court rejects the notion that it should apply cases interpreting Texas and Illinois statutes to an Ohio statute, especially because in this case, there is an advisory opinion written by the Ohio State Attorney General addressing this specific issue that finds that the provisions of the BSA before this court do not violate the Ohio statute.[20]

The Ohio attorney general's opinion was in response to an inquiry from the director of the Ohio state dental board as to the ability of unlicensed persons to enter into an agreement with a licensed dentist to manage or operate a dentists office. The attorney general stated that in his opinion, 1) these agreements were not per se violations of § 4715.01; 2) Section 4715.01's language of "manager, proprietor, operator or conductor of a place performing dental operation" denotes a person who exercises authority over matters that directly relate to the health and welfare of a dental patient that receives care or treatment from a dentist or dental hygienist, not someone who engages in those activities more closely related to the proper and efficient management of the economics of a dental practice.

---

[20] 1995 Ohio Op. Atty. Gen. No. 95-045, 1995 WL 783022.

10

The opinion went on to conclude that while certain agreements may cross the line and give a management company so much authority over the day to day operations of the dental practice that its business decisions effectively involve patient care, each agreement should be looked at on an individual basis. The attorney general specifically listed several activities that did not violate § 4715.01 including: arrangements whereby a management company leases dental equipment and office space to the dentist (provided 4715.01(B) is observed), responsibility for bill preparation and collection, deposit and disbursement of funds of the practice, and entering into agreement of lengthy or indefinite duration with the dentist provided that the agreement contains a provision allowing the dentist to terminate the agreement under specified circumstances.

Components of the agreement that the attorney general found to be acceptable but perhaps requiring enhanced scrutiny included: calculating a management company's compensation as a percentage of a dental practice's profits, giving the management company authority to hire and set compensation for office personnel other than licensed dental professionals, and granting the management company the authority to set business hours or establish a specific number of hours an office must be open per week.

Although at the trial, it was established that OCA engaged in many of these activities that the Attorney General felt could be suspect, there was no direct evidence presented that OCA in any way controlled the patient care or affected patient care decisions. In fact, Scotese unequivocally testified that he alone was responsible for all aspects of patient care and that OCA had never practiced dentistry, as he defined it. He also testified that the clinical and non-clinical

11

staff worked under his supervision and could be hired or fired by him.[21] Finally, Scotese admitted that he did not believe that OCA was engaged in the illegal practice of dentistry, and until a month or so before the trial, did not believe the BSA was illegal.[22]

There has never been a finding by any Ohio court or regulatory body that the relationship between Scotese and OCA violates Ohio law. To the contrary, as previously discussed, the Ohio Attorney General has indicated that in his opinion such a BSA is not illegal. This court declines the invitation of Scotese's attorney to be the first court holding that activities such as those engaged in by OCA violate Ohio law. Any such decision is best left to either a state of federal court sitting in Ohio, which should have more expertise in Ohio law and have a more fully developed evidentiary record to make such a decision than this court. Thus, this court simply holds that Scotese failed to prove that under Ohio law the BSA is illegal. Because Scotese failed to prove any of the counts in his adversary complaint, the complaint is dismissed.

New Orleans, Louisiana, August 24, 2007.

J. A. Brown
Jerry A. Brown
U.S. Bankruptcy Judge

---

[21] Trial Transcript of March 15, 2007 at 59-60.

[22] Trial Transcript of March 15, 2007 at 63-64.